RICHARD P. ESTEY and another *vs.* CHARLES A. BOARDMAN.

*Trover by one co-tenant of a chattel against another, does not lie for a mere attempt to sell.*

One tenant in common cannot maintain an action of trover for conversion against a co-tenant for an attempted sale of a larger share of a vessel than belonged to him, where no sale was fully effected and no title to, or possession of the common property passed thereby.

ON MOTION by the defendant to set aside a verdict rendered for the plaintiffs, on the ground that it was contrary to the law and the evidence.

This was an action of trover to recover the value of a lighter, or small vessel, her chain and anchor.   The defendant pleaded the general issue and a brief statement denying the plaintiffs' ownership or right of possession of the vessel, and setting up title and a right of possession in himself; claiming that, if he did not own the whole, he was a tenant in common, owning one-half of the craft.

Robert B. Estey and Richard P. Estey, composing the firm of R. B. Estey & Co., the plaintiffs, were merchants at Calais.   The vessel in controversy was built at Calais in 1867–8, by William Charles Cookson and Henry C. Hold, upon an original expectation that each was to have one-quarter and that other parties would purchase one-half.   Hold testified that, failing to find purchasers, it was agreed between W. C. Cookson and him to go on and build her equally, but W. C. Cookson swore that nothing was said about Hold's taking more than one-quarter till after she was launched (July 25, 1868), just prior to the time the mortgage of her to the defendant was given and about seven weeks after that to the plaintiff was executed and recorded.   The verdict was for $258.75. William Cookson, father of William C., did some work upon the vessel, June 6, 1868 ; William and William C. Cookson mortgaged to the plaintiffs " the new vessel now building by us near the Marine Railway, on Kelley's Point (so called), in Calais  . . . with all her spars, tackle, appurtenances," etc., etc.   William Cookson's name was signed to this document, as the plaintiffs testified, to bar any claim of lien by him upon the vessel.   Upon the twenty-eighth day of July, 1868, three days after she was launched, Henry C. Hold and William Charles Cookson (by the name of Charles Cookson, he being commonly called by his middle name, to distinguish him from his father), executed a mortgage of "a certain new vessel built by us on the wharf of William E. McAllister," to the defendant.

There was no question but that the vessel referred to in these two mortgages was the same. Both mortgages were recorded about the times they were given. December 22, 1868, the plaintiffs notified a foreclosure of their mortgage, which notice was recorded May 21, 1869. The plaintiffs took possession of the vessel, December 10, 1868, procured the chain and anchor sued for, moored her by them, and afterward hauled her out upon Kelley's Beach. She lay there a long time and until the defendant took her off, had her towed down to the marine railway, and hauled her out to be calked. He attempted an adjustment of their respective interests with the defendants, but as he claimed one-half, while they would only admit his ownership of one-quarter, nothing was accomplished. August 2, 1870, Mr. Boardman advertised her to be sold at auction, on the railway, on the 6th day of the same month at two o'clock in the afternoon, saying that, at the time and place designated, he should sell " a small vessel built by Clarkson and Hold ;" but he testified that at the time she was set up for sale both he and the auctioneer stated publicly that it was only his right, title, and interest in the vessel that was to be sold, but that he claimed this to be a one-half interest ; that the chain and anchor belonged to Mr. Estey, and certain other articles to another person, and would not be sold.

A Captain Cook bid off the vessel, but, failing to procure the Esteys' interest (the plaintiffs offering to sell him the whole, not one-half, the vessel), he declined to complete the purchase, or pay for, or take the vessel, or to have anything to do with her. Soon after the auction, while still upon the railway she was consumed by fire, which destroyed a great deal of other property at the same time. The chain and anchor were permitted to remain where the fire left them, the plaintiffs declining to have aught to do with them after their removal from Kelley's Beach (whence they were brought in the vessel, when she was towed down to go upon the Railway), and the defendant disclaiming all title or interest in them. One witness testified that the fire extended beyond the point on Kelley's Beach from which the vessel was removed.

The motion for a new trial was argued by

*E. B. Harvey*, for the defendant.

Trover by one tenant in common against his co-tenant can only be maintained by such an act as amounts to a total destruction of the chattel.  2 Greenl. on Ev., § 646.  The defendant never denied the plaintiffs' right to one-half the vessel, did not seek to deprive them of it, or to injure them in it, but stated to them all he proposed to do, and tried, ineffectually, to adjust matters with them.  The only acts which are claimed to be a conversion were the removal of the vessel from Kelley's Beach to the dry dock and the attempt to sell her at auction there, which failed.  The mere taking possession of a chattel by a part-owner is not a conversion of his co-tenant's interest.  2 Hilliard on Torts, 277–8, and cases there cited, and in the notes.  *Heath* v. *Hubbard*, 4 East. 107 ; *Foster* v. *Crabb*, 11 Eng. L. & Eq. 521 ; *Moorly* v. *Buck*, 1 Sandf. 304 ; *Bonner* v. *Latham*, 1 Iredell, 271.

The demand, after she had been burned, could not be complied with ; so is no evidence of conversion.  *Daniels* v. *Daniels*, 7 Mass. 137 ; *Dain* v. *Cowing*, 22 Maine, 347 ; *Boobier* v. *Boobier*, 37 Maine, 406.

*A. McNichol*, for the plaintiffs.

A party in possession of a chattel can maintain trover against one who takes it away unless the latter can show a better title.  *Hubbard* v. *Lyman*, 8 Allen, 520.  The plaintiffs were in possession under a mortgage covering the entire vessel, when she was taken from them by the defendants.

At all events, the defendant was only second mortgagee so far as Charles Cookson's interest was concerned ; and Cookson being a party to them both, the defendant's must be considered as a second mortgage.

Whether the defendant's acts in removing the vessel from the beach to the place where she was consumed was the cause of her destruction, was a question of fact for the jury, which they decided in our favor.

Hold, at most, could not convey to the defendant more than one-

quarter of the vessel; yet, by Mr. Boardman's own testimony he took entire control of her, advertised the whole, and at the auction claimed and sold one-half. This was clearly a conversion of the quarter that he claimed and sold without any color of title. *Wheeler* v. *Wheeler*, 33 Maine, 347 ; *Barnardston* v. *Chapman*, 4 East. 121.

PETERS, J. This case comes up on a motion for a new trial, and presents the question whether as a matter of law, upon all the facts proved, the plaintiffs were entitled to recover. We think not.

Hold and Cookson built a vessel, the proportions of respective ownership being uncertain. But it may be regarded as ascertained by the verdict that Hold owned one, and Cookson three-quarters of her. Cookson, owning less than the whole, mortgaged the vessel to the plaintiffs. Afterwards Cookson and Hold jointly mortgaged her to the defendant. This would make the plaintiffs and the defendant tenants in common, in the proportion of the respective ownership and interests of Cookson and Hold.

There is no foundation in the plaintiffs' claim, that the defendant would take nothing primarily by his mortgage, but only as a second mortgagee. There is no reference made to the earlier in the later mortgage, and while the plaintiffs would be first in representing Cookson's share, the defendant would be a second mortgagee so far as that share was concerned, and would be the only person having any claim upon the share which belonged to Hold.

The plaintiffs first got possession of the vessel, and, as there was a dispute about the ownership between the parties, put her upon a beach where she remained out of use and with no one on board of her. Then the defendant took possession and carried her to a dry dock for the purpose of putting her into some employment, or availing himself of a chance to sell. In this the defendant committed no act amounting to a conversion of the property as between tenants in common. The vessel was not carried beyond the reach of the plaintiffs, nor was she taken by any forcible act against the resistance of anybody. Lord Coke says the remedy

for such taking would be for the co-tenant to retake her " when he can see his time."

After this the defendant undertook to sell his interest in the vessel at auction, and proceeded so far as that a Mr. Cook bid her off. It is not certain from the evidence what proportion of the vessel was undertaken to be sold. It was stated at the sale that only the defendant's actual interest was offered, but it may be admitted as found by the verdict, that the proposition was made to sell an undivided half. The sale was not completed, inasmuch as the person, to whom she was struck off, refused to comply with his bid as he immediately ascertained that there was a dispute of ownership. Nor did the defendant claim to hold the bidder as a purchaser. This act, as between tenants in common, was not a conversion. Whether the absolute sale of the whole of an entire chattel by one of several owners would amount to a conversion, by one tenant of his co-tenants' share, is a point upon which in different courts there have been different opinions, though decided in this State affirmatively ; but the doctrine has never been anywhere carried so far as to make anything less than an absolute sale a conversion. To authorize an action of trover for conversion it must appear, not only that the defendant assumed to sell, but that he actually did sell his co-tenants' share. There must be an actual completed sale, or something equivalent to it, or as efficacious as that would be to show actual appropriation. Here was, at most, but an abortive sale. Nothing was delivered over ; nothing passed ; and no change whatever took place either in possession or title. As the facts in this case fall short of showing an absolute completed sale, the verdict cannot be . sustained upon the rule nor upon the reason of the rule as stated in the cases of *Dain* v. *Cowing*, 22 Maine, 347, and *Weld* v. *Oliver*, 21 Pick. 559, and other cases cited. *Motion sustained. Verdict set aside and new trial granted.*

APPLETON, C. J.; CUTTING, WALTON, DICKERSON, and BARROWS, JJ., concurred.